CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 10 2008

JOHN F. CORCORAN, CLERK
BY: /s/
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JANIE E. MONTGOMERY, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 7:07cv305 |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| COMMISSIONER OF SOCIAL SECURITY, | ) United States Magistrate Judge |
| Defendant | ) |

## REPORT AND RECOMMENDATION

Plaintiff Janie Montgomery ("Montgomery") brings this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for supplemental security income benefits under the Social Security Act ("Act"). Because of Montgomery's advanced age and educational level, this appeal turns on one issue, whether substantial evidence supports the Commissioner's finding that Montgomery had skills transferable from her prior work as a coil winder. This is because if no such transferable skills exist, Montgomery meets the requirements for disability benefits under the Medical-Vocational Guidelines contained in Subpart P of Part 404 of the Social Security Regulations. The evidence on transferability of skills in the administrative record is ambiguous at best and certainly does not rise to the level of substantial evidence. As such, this case must be reversed and remanded to the Commissioner with direction for calculation of payment of benefits.

I.

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the

Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate SSI claims. 20 C.F.R. §§ 404.1520, 416.920; see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Montgomery, born in 1947, was of advanced age on the alleged onset date of May 19, 2005. Montgomery completed high school and received some computer training, but did not complete the program. (Administrative Record, hereinafter "R." at 219) At the time of the hearing, Montgomery worked as a childcare provider/nursery helper at a church for four to six hours on Sunday mornings, which the ALJ determined did not qualify as substantial gainful activity under 20 C.F.R. § 416.974. (R. 17)

Montgomery's last substantial gainful activity was as a school janitor, during 1993-94, and before that worked as a solderer doing assembly work on circuit boards at Kollmorgen. (R. 220-21) During the 1982-90 period, Montgomery worked as a coil winder and assembler for Western Electric in Radford. (R. 92)[1]

The ALJ found that Montgomery has the following impairments: "degenerative joint disease of the lumbosacral spine, diabetes mellitus and hypertension," which are severe in combination. (R. 17) The ALJ noted that "the objective medical evidence failed to reveal a current diagnosis of, or treatment for, depression or any functional limitations related to a psychiatric condition." (R.18)

Despite Montgomery's severe impairments, the ALJ found that she did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, App. 1. (R.18) The ALJ next evaluated Montgomery's residual functional capacity ("RFC"), about which there

---

[1] The record is not clearly developed on Montgomery's specific dates of employment with either Kollmorgen or Western Electric. Montgomery's handwritten Work History Report indicates that she worked as coil winder for Western Electric (later ATT) between 1982 and 1990 and worked as a solderer for Kollmorgen from 1990-1991. (R. 92) The wage information in the record shows a substantial decline from 1990 to 1991, and no wages in 1992. (R. 56) The record is unclear as to which month in 1990 Montgomery left the coil winder job at Western Electric.

3

does not appear to be any dispute.[2] The ALJ determined that Montgomery "has the residual functional capacity to sit up to four hours (with a sit/stand option) in an eight-hour workday with normal breaks, stand and walk up to four hours in an eight-hour workday with normal breaks, and lift/carry weights of up to ten pounds occasionally. Nonexertionally, despite her combined impairments, she can occasionally bend, stoop, crouch and balance." (R. 18) At step four, the ALJ determined that Montgomery could not return to her past relevant work as a childcare attendant, coil winder (assembler), home care aide, or janitor. (R. 20) Notably, the ALJ determined that Montgomery could not return to such work because "[b]ased on vocational expert testimony, these jobs, as performed by the claimant, entailed light to medium exertion, exceeding her residual functional capacity for a reduced range of sedentary work." (R. 20) The ALJ next determined whether any jobs existed in the national economy which Montgomery could perform given her RFC.

At step five, the ALJ determined that an individual with Montgomery's age, education, RFC, work experience and transferable skills could perform the duties required of a coil winder, "of which there are 1,000 jobs regionally and 86,000 nationally." (R. 21) In making this determination, the ALJ relied upon the testimony of a vocational expert ("VE"). The VE's conclusion was rather counterintuitive, concluding that Montgomery could not perform her past relevant work of a sedentary coil winder, presumably because that job was done sitting all day, but she could do the job of coil winder with a sit/stand option, sitting half the day and standing the other half. The ALJ concluded that Montgomery is not disabled, despite the fact that

---

[2] Because Montgomery does not raise any issues as to the medical evidence before the ALJ nor does she contest the ALJ's decision as regards the medical evidence or her residual functional capacity, the court need not exhaustively catalog the medical evidence of record.

4

Montgomery's "additional limitations do not allow her to perform the full range of sedentary work," because coil winder jobs with a sit/stand option existed in significant numbers in the national economy.[3]

### III.

Under the Medical-Vocational Guidelines, commonly referred to as the "grids," Montgomery falls under either Rule 201.06 or 201.07. There is no dispute as to the first two categories under these grid headings. Montgomery, 57 years old at the time of her application for benefits in 2005, was of advanced age. Also, Montgomery completed high school, but does not have skills providing for direct entry into skilled work. The only remaining issue is whether Montgomery possessed any transferable skills. If she did, then the decision under Rule 201.07 is not disabled; if she did not, then Rule 201.06 provides that she is disabled.

Not all past work may be considered in determining whether a claimant has transferable skills. Indeed, social security regulations provide that "[w]e do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled applies." 20 C.F.R. § 416.965(a). As the regulations explain, "[a] gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job then continue to apply. The 15-year guide is intended to insure that remote work experience is not currently applied." Id.

Montgomery's prior work as a coil winder last occurred on the cusp of that 15 year period for consideration under 20 C.F.R. § 416.965(a) as she worked in that capacity from 1982 until sometime in 1990. On this record, it is impossible to know whether 15 years had elapsed by the

---

[3] On a later application, Montgomery was awarded benefits as of June 15, 2007.

5

time the initial decision denying Montgomery's claim was made on July 29, 2005. Certainly, by the time of the ALJ's decision on June 30, 2006, however, it had been more than 15 years since Montgomery had worked at this job.[4]

The evidence in the record regarding transferability of skills is sparse, ambiguous and to some extent contradictory. It was first raised by the ALJ at the administrative hearing in a question to the VE, as follows:

> Q. So let's say that she can't do those as she did them, okay, but you would say the coil winder is semiskilled and the solderer – did you say it was unskilled?
>
> A. Yes.
>
> Q. Unskilled. Okay. So there's no transfer of skills to that so we can't consider that job. Okay. But could she do the coil winder? Could she transfer skills to being a light coil winder?
>
> A. No.
>
> Q. Okay. And so those would be – what kind of skills would be transferable?

---

[4] There is some question as to the date for calculating the end of the 15 year period. 20 C.F.R. § 416.964 provides that "[w]e do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled applies." Just exactly what date is the "time we are deciding" is not readily apparent. To provide some clarity, Social Security Ruling 82-62 states "[w]hen deciding whether a claimant is disabled under title II or title XVI, the 15-year period is generally the 15 years prior to the time of adjudication at the initial, reconsideration or higher appellate level." Thus, if you use the date of the ALJ's decision, June 30, 2006, as the end point, it is clear that more than 15 years had passed since Montgomery had last wound coils. If you use the date of the initial decision denying benefits, July 29, 2005, however, then there is some question as to whether 15 years had passed since there is no evidence as to which month in 1990 Montgomery last worked for Western Electric (ATT). Regardless, while Montgomery apparently had eight years of experience as a coil winder, the vast majority of that period is simply too long ago and is not usually considered by the Commissioner in assessing whether Montgomery possesses skills and abilities for work at the time the disability decision is made.

6

> A. Coil winder is just basically the – basically good use of the hands.
>
> Q. So it's a process use of a hand tool. Anything else?
>
> A. [INAUDIBLE]

(R. 239) It is difficult to discern how the ALJ could conclude that Montgomery had any transferable skills from the coil winder job when the VE answered "No" to the question posed about transferability of coil winder skills by the ALJ. Despite this testimony, however, the ALJ apparently assumed that there could be some transferability of skills as this issue was broached at two later points during the VE's testimony.

> Q. Okay. Now, she's of advanced age. Now with considering the tools, word processor setting and industry, how much vocational adjustments would be necessary to transfer skills from the work that she did to this job?
>
> A. [INAUDIBLE]
>
> Q. Please speak up because I don't think they're hearing you.
>
> A. There wouldn't be a great difference, I don't believe.
>
> \* \* \*
>
> Q. Yeah. My understanding of your testimony was that she could not do her past work as she performed it?
>
> A. As she performed it, that is correct.
>
> Q. But that she has skills which she could transfer to other coil winder jobs that exist in the economy. And I guess his question is, do those other jobs permit one to alternate between sitting and standing on the job?
>
> A. The majority of them do.

7

> Q. The majority of them. So you think that not all 1,100, is there some number?
>
> A. [INAUDIBLE]

(R. 240-41, 242-43) Indeed, under the Medical Vocational Guidelines, in order for the ALJ to find Montgomery not disabled, the ALJ must conclude, as he did, that Montgomery had transferable skills.

There are several reasons that this conclusion is not supported by substantial evidence. First, the testimony as to the existence of transferability of skills is both contradictory and ambiguous. Critically, although the ALJ found transferability of skills, when asked directly about transferability, the VE answered in the negative. In apparent contradiction to this testimony, later questions posed by the ALJ to the VE appeared to assume that the VE testified just the opposite. Next, there is no testimony in the record as to just what skills were transferable, as the VE's testimony on this point was first inaudible and later very general. For a person of advanced age such as Montgomery, the regulations require more. 20 C.F.R. § 416.968(d)(4) provides that "[i]f you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." The VE's testimony simply does not meet what the regulations require in this regard.

Moreover, by the time of the ALJ's decision, it had been more than 15 years since Montgomery had worked as a coil winder, so there is a substantial question as to whether this ancient job may be appropriately considered for transferability in the first instance. See 20

8

C.F.R. § 416.965. As noted above, it is simply unknown from this record as to whether 15 years had passed between the date in 1990 when Montgomery lost her job winding coils and the date of her initial denial on July 29, 2005. To be sure, the initial decision was within months, one way or the other, of the 15 year anniversary since the last date Montgomery worked as a coil winder. The undersigned cannot discern any effort by the ALJ to clarify this point. Because the VE testified that Montgomery could not perform her past relevant work and this case was decided at step five of the sequential evaluation process, the Commissioner bears the burden to establish transferability of skills to other work. Plainly, the Commissioner did not marshal substantial evidence in this record to show that Montgomery worked at the coil winding job within the past 15 years nor did the Commissioner develop any other evidence to suggest that a departure from the 15 year guide set forth in 20 C.F.R. § 416.964 is appropriate in this case.

Because of the contradictory, ambiguous and vague testimony as to the critical issue of transferability of skills, the undersigned is constrained to conclude that substantial evidence does not support the Commissioner's decision. Therefore, it is **RECOMMENDED** that this case be reversed and remanded to the Commissioner for calculation of payment of benefits.

## IV.

The Clerk is directed to provide copies of this Report and Recommendation to counsel of record and to transmit the record in this case to James C. Turk, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as

9

Case 7:07-cv-00305-JCT-mfu   Document 22   Filed 07/10/08   Page 9 of 10   Pageid#: 72

well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

**ENTER**: This 10th day of July, 2008.

/s/ Michael F. Urbanski
Hon. Michael F. Urbanski
United States Magistrate Judge